

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-3347
Re: Whether property of Musical
Arts Conservatory of West
Texas is exempt from taxation.

In your letter of March 27, 1941, you request our
opinion as to whether the property of Musical Arts Conserva-
tory of West Texas is exempt from taxation at the hands of
Amarillo Independent School District. We have inspected the
charter of the Conservatory and find that it is a private
corporation with a capital stock of Two Thousand Five Hundred
Dollars ($2,500.00), consisting of two thousand five hundred
(2,500) shares of the value of One Dollar ($1.00) each. The
purpose clause reads:

"The purpose for which it is formed is for
the support of an educational undertaking, in-
cluding making contracts with students and/or
their parents; instructing such students in music,
painting, and other fine arts for a stipulated
tuition, a percentage of which is to be used in
compensating teachers who instruct such students
and the balance to be used in defraying general
operating expenses of the Conservatory; to buy
and own property to be used in connection with
the conduct of such business; and to make con-
tracts in general pertaining to such business,
as authorized by Subdivision 2, of Article 1302
of the Texas Revised Civil Statutes of 1925."

Section 2, of Article VIII, Constitution of Texas
provides that "the Legislature may, by general laws, exempt
from taxation . . . all buildings used exclusively and owned
by persons or associations of persons for school purposes
and the necessary furniture of all schools . . . ."

Honorable T. M. Trimble, Page 2

In your letter you do not advise us as to the facts concerning the operation of the Conservatory, nor for that matter does the Amarillo School District give you the facts other than to send you a copy of an affidavit made by the President of the institution, copy of an opinion of attorneys for the Conservatory, and certain literature promulgated by it, and all of which you have handed to us along with your opinion request.  In the affidavit it is said:

". . . that said corporation is engaged in the school business teaching the various fine arts, -such as voice, music of all kind, elocution and other forms and types of educational teachings, and that said school is operated strictly without profit to the stock holders of said corporation; and does not receive remuneration whatsoever save and except tuition paid by the various students who attend and patronize said school."

In the attorneys' opinion we find the following statement of facts:

". . .

"The Conservatory was organized originally about twelve years ago by a group of civic minded ladies, who are well trained and experienced in the profession of music, with the primary thought of ultimately attaining for Amarillo and vicinity a municipally owned, maintained and operated fine arts conservatory for the advancement and teaching of the fine arts on a basis similar to, the Fine Arts Conservatory of Cincinnati.  With this thought in mind, the institution operated for a number of years without corporate entity.  About June 7, 1939, the property in which the Conservatory was then carrying on its enterprise was sold by the owner to the American Legion, thereby necessitating the Conservatory finding other quarters, none of which, sufficient to meet their needs, could be rented in Amarillo, which necessitated the purchase of a suitable place to carry on the work of the Conservatory or a discontinuance of its enterprise. Rather than to permit the fruits of their efforts to go to waste, this same group of ladies organized the present corporate entity for the purpose

Honorable T. M. Trimble, Page 3

of buying a building in which to continue the
program they had been carrying on. Neither be-
fore or since the incorporation of the concern
has it been operated for profit to the owners
or stock-holders. On the contrary, since its
corporation it has adopted a set of by-laws with
an irrevocable provision therein inhibiting the
distribution of profits among the stock holders.
All sums of money realized by the concern are used
in furtherance of an advancement program and to
carry on the workings of the institution.

"The teachers in the present institution,
some of whom are the original incorporators, are
paid a percentage of the tuition fees charged
the students they instruct, for their services
rendered in instructing such students, and the
balance of such tuition fees go into this general
fund to be used to defray the operating expenses
of the institution and in furtherance of an ex-
pansion program. The building the institution
now owns has never been and never will be in the
future used for any purpose other than strictly
school purposes, which under the statute in ques-
tion we deem to be the fact which determines the
right to tax exemption. The courses taught by
the Conservatory meet the requirements of the
National Association of Schools of Music in America,
and are accredited by the Texas State Department
of Education."

In this opinion we shall assume the strict correct-
ness of each of the facts stated in said affidavit and attor-
neys' opinion. We find the following further statement in
said opinion:

". . . We readily concede that the Conserva-
tory would not be entitled to tax exemption if the
school building were used to house a stock of mer-
chandise daily subjected to retail trade, or were
it used to house the members of the faculty or were
rooms in the building rented to other persons for
any purpose. This, of course, is not the case.

". . ."

630

We shall assume from the above language as well as other statements made in the opinion that the property is not only owned by the corporation but that it is devoted exclusively to the purposes of the institution as set out in the quoted part of the affidavit made by it's president.

If there is any variance of the actual facts from the above, we do not tender this opinion as necessarily controlling the question.

That the Conservatory is a school seems so clear to us as to need no discussion. If the property in question is owned and used exclusively for such school purposes, the constitutional provision quoted is amply broad to authorize the Legislature to extend the exemption to both the buildings and necessary furniture of the Conservatory, whether publicly or privately owned. See Cassiano vs. Ursuline Academy, 64 Tex. 673. Such section of the Constitution is not self enacting, however, but by its terms only grants the power to the Legislature to allow the exemption. Morris vs. Masons, 5 S.W. 519; City of Houston vs. Scottish Rite Benev. Ass'n., 230 S.W. 978; Santa Rosa Infirmary vs. San Antonio, 259 S.W. 931. Hence we must look to the statute. Art. 7150, Revised Civil Statutes, provides in part:

"The following property shall be exempt from taxation, to-wit:

"1. Schools and Churches.--Public school houses and actual places of religious worship, also any property owned by a church or by a strictly religious society, for the exclusive use as a --dwelling place for the ministers of such church or religious society, the books and furniture therein and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and which yields no revenue whatever to such church or religious society; provided that such exemption as to the dwelling place for the ministers shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land. All public colleges, public academies, and all endowment funds of institutions of learning

Honorable T. M. Trimble, Page 5

and religion not used with a view to profit, and
when the same are invested in bonds or mortgages,
and all such buildings used exclusively and owned
by persons or associations of persons for school
purposes; provided that when the land or other pro-
perty has been, or shall hereafter be, bought in
by such institutions under foreclosure sales made
to satisfy or protect bonds or mortgages in which
said endowment funds are invested, that such ex-
emption of such land and property shall continue
for two years after the purchase of the same at
such sale by such institutions and no longer.
This provision shall not extend to leasehold es-
tate of real property held under authority of any
college or university of learning."

Reading the above it is seen that while all build-
ings "used exclusively and owned by persons or associations
of persons for school purposes" are given the exemption, it
is not extended to the furniture or other personal property
of any except "public" schools.

Students must pay tuition sufficient to meet the
operating expenses of the institution, including teachers'
compensation. While the title to the properties is in the
corporation, the stock of that entity belongs to private in-
dividuals who would obtain such assets in case of a dissolu-
tion of the corporation. We do not believe this is a public
school. Pomfret School vs. Town of Pomfret, 136 Atl. 88,
Connecticut Supreme Court of Errors; and, our Opinion No.
O-1641.

In our opinion the personal property of the insti-
tution is not exempt from taxation. It is our further opinion,
however, that the building or buildings owned by and used ex-
clusively by it for its corporate purposes are exempt. This
would include the necessary grounds. St. Edwards' College vs.
Morris, 17 S.W. 512, 82 Tex. 1.

APPROVED APR 16, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

GRL:mp

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Glenn R. Lewis
Assistant

APPROVED
OPINION
COMMITTEE
BY _____
CHAIRMAN